# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **SHERRY HARVEY,** ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **4:20-cv-996-CLM** |
| ) | |
| **KILOLO KIJIKAZI,** ) | |
| **Acting Commissioner** ) | |
| **of the Social Security** ) | |
| **Administration,** ) | |
| **Defendant.** ) | |

## **MEMORANDUM OPINION**

Sherry Harvey seeks Supplemental Security Income ("SSI") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Harvey's application in an opinion written by an Administrative Law Judge ("ALJ"). Harvey argues: (1) that the ALJ's residual functional capacity assessment was deficient, and (2) that the ALJ erred in relying on Harvey's daily activities to discount her subjective pain testimony.

As detailed below, the ALJ applied the correct legal standards and substantial evidence supports his decision. So the court will **AFFIRM** the SSA's denial of benefits.

## I. Statement of the Case

### A. Harvey's Disability, as told to the ALJ

Harvey was 49 when she applied for SSI and 51 at the time of the ALJ's hearing decision. R. 14, 166. Harvey completed one year of college in 2010. R. 189. And she has past relevant work as a retail sales clerk and personal care aide. R. 59.

In her disability report, Harvey alleged that she has problems with her legs and feet, carpal tunnel, anxiety, and diabetes. R. 188. At the ALJ hearing, Harvey testified that she feels like she can't hold a job because it's hard for her to stand and her carpel tunnel causes her to drop things. R. 47. For example, Harvey will sometimes drop pots and pans when cooking. R. 53. And if Harvey's having a bad day, she uses a cane. R. 47–48. Harvey says that to make it through the day without laying down, she typically must change from sitting to standing positions every 20 to 30 minutes. R. 51–52.

Harvey lives with her 9-year-old son. R. 41. Though Harvey doesn't have a car, she still has a driver's license and drives her friend's car. R. 54. And Harvey spends most of her day sitting or laying on the couch and watching TV. R. 57.

### B. Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| *Determine Residual Functional Capacity* | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

See 20 C.F.R. §§ 416.920(a), 416.920(b) (Step 1); 20 C.F.R. § 416.920(c) (Step 2); 20 C.F.R. §§ 416.920(d), 416.925, 416.926 (Step 3); 20 C.F.R. § 416.920(e-f) (Step 4); 20 C.F.R. § 416.920(g) (Step 5). As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis. The intermediate step of determining Harvey's residual functional capacity is the most important step here, as all of Harvey's challenges flow from the ALJ's decision at this point.

3

### C. Harvey's Application and the ALJ's Decision

The SSA reviews applications for SSI in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 416.1400(a)(1-4).

Harvey applied for SSI in June 2017, claiming that she was unable to work because of various ailments, including carpal tunnel syndrome, diabetes, and anxiety. After receiving an initial denial in August 2017, Harvey requested a hearing, which the ALJ conducted in April 2019. The ALJ ultimately issued an opinion denying Harvey's claims in June 2019. R. 14–28.

At Step 1, the ALJ determined that Harvey was not engaged in substantial gainful activity and thus her claims would progress to Step 2.

At Step 2, the ALJ determined that Harvey suffered from the following severe impairments: lumbar spine degenerative disc disease; peripheral neuropathy; mild-to-moderate bilateral foot degenerative joint disease; and severe bilateral carpal tunnel syndrome.

At Step 3, the ALJ found that none of Harvey's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. So the ALJ next had to determine Harvey's residual functional capacity.

The ALJ determined that Harvey had the residual functional capacity to perform light work with these added limitations:

- Harvey can occasionally push and pull with her right foot.

- Harvey can occasionally climb ramps and stairs.

- Harvey cannot climb ladders, ropes, or scaffolds.

- Harvey can occasionally balance, stoop, kneel, crouch, and crawl.

- Harvey can occasionally grasp, finger, and feel bilaterally.

- Harvey must avoid concentrated exposure to extreme cold and humidity.

- Harvey must avoid all hazards, such as open flames, unprotected heights, and dangerous moving machinery.

- Harvey must be allowed to alternatively sit and stand every 20 minutes throughout the workday to change positions, but without leaving the workstation.

At Step 4, the ALJ found that Harvey could not perform her past work. At Step 5, the ALJ determined that Harvey could perform jobs, such as counter clerk and furniture-rental clerk, that exist in significant numbers in the national economy and thus Harvey was not disabled under the Social Security Act.

Harvey requested an Appeals Council review of the ALJ's decision. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision.

As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III.    Legal Analysis

Harvey makes two arguments for why the ALJ erred in finding her not disabled. First, Harvey argues that the ALJ erred because the ALJ's residual functional capacity assessment lacks the support of substantial evidence, doesn't show that she can hold a job, violates the requirements of SSR 96-8(p), and fails to point to a physical capacity evaluation by a treating or examining physician. Second, Harvey asserts that the ALJ erred in relying on Harvey's daily activities to discount her subjective pain testimony. The court will address each argument in turn.

## A. Residual Functional Capacity Assessment

Harvey's argument that the ALJ's residual functional capacity assessment was deficient has four parts.

1. Substantial evidence: Harvey first argues that the ALJ's residual functional capacity assessment is conclusory and lacks the support of substantial evidence. But as shown below, the ALJ's residual functional capacity assessment is not conclusory. Nor does the ALJ's finding that Harvey could perform a range of light work lack the support of substantial evidence.

The SSA's regulations define light work as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 CFR § 416.967. Even so, "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* The ALJ supported his finding that Harvey could perform light work by pointing to Harvey's objective medical records/treatment history, Harvey's daily activities, and the State agency medical consultant's opinion on Harvey's functional limitations.

As the ALJ acknowledged, Harvey's medical records establish that she suffers from degenerative disc disease, peripheral neuropathy, bilateral carpal tunnel syndrome, and bilateral foot degenerative joint disease. R. 22–23. These records also show that Harvey had a right club foot as a child and that her lower right leg has

7

decreased sensitivity to light touch. R. 23. But as the ALJ correctly noted, several of Harvey's medical records note that she wasn't in any apparent acute or chronic distress. R. 371–72, 385, 560, 575. And during examinations, Harvey often exhibited a normal range of motion. R. 385, 601.

During Harvey's first pain management visit, Dr. Underwood did report that Harvey had moderate lower back pain that restricted her lumbar spine flexion. R. 587. But he also noted: (1) that Harvey's right and left lateral flexion were full and asymptomatic to 25 degrees, and (2) that Harvey had no pain when rotating or abducting her hips. *Id.* And Dr. Underwood's later treatment notes don't record range of motion limitations. R. 560, 563, 568, 575, 578, 581, 584. Plus, Harvey's most recent records from her primary care physician, Dr. Teschner, show that Harvey had no atrophic changes in her limbs, no gross impairment to active range of motion, and normal and symmetrical extremities. R. 601.

As for Harvey's bilateral carpal tunnel syndrome, Harvey displayed normal dexterity and bilateral hand grip and normal range of motion of wrists, hands, and finger joints during her consultative examination with Dr. Iyer. R. 385, 388. And Harvey told Dr. Iyer that she didn't have problems buttoning and buckling. R. 384.

The ALJ also considered evidence that Harvey uses a cane to get around. As the ALJ noted, Dr. Teschner only prescribed Harvey a cane after she requested one. R. 370, 373. And though Dr. Iyer and Dr. Underwood observed Harvey using a cane,

her other medical records don't report use of a cane during the relevant period. R. 421, 437, 442, 446–47, 450–51, 455, 458–60, 463–65, 467, 471–72, 477, 482, 485–86, 560, 578, 601, 605–06, 610. Plus, the ALJ reasonably found that Dr. Iyer's observations that Harvey's lower extremities exhibited 5/5 strength and no muscle atrophy contradict Harvey's allegations that she needs a cane. R. 385.

The ALJ also pointed to the State agency physician's finding that Harvey could perform a range of light work and Harvey's treatment history as supporting his residual functional capacity assessment. The ALJ agreed with most of the State agency physician's recommended limitations R. 25–26. But he also found that Harvey's residual functional capacity should include further restrictions, limiting Harvey to only occasionally being allowed to grasp, finger, and feel bilaterally and giving her a sit/stand option. R. 26. In considering Harvey's treatment history, the ALJ noted that Norco alleviated Harvey's symptoms. R. 548, 559, 577.

A reasonable person could look at this evidence and agree with the ALJ's finding that Harvey can perform light work with several added limitations. In support of her argument that she can't work, Harvey points to: (1) her ALJ hearing testimony; (2) her diagnoses of severe bilateral carpal tunnel syndrome, lumbar spine degenerative disc disease, and bilateral foot degenerative joint disease; and (3) Dr. Iyer's notes on what she told him. But it's not this court's job to "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the

[Commissioner]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). And diagnoses alone do not establish that Harvey has any particular functional limitations. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005). Besides, the ALJ didn't find that Harvey had no symptoms or work-related limitations. Instead, the ALJ found that Harvey's symptoms weren't as severe as she alleged.

Nor is the court persuaded by Harvey's cursory argument that the ALJ erred by not including limitations related to pain due to partial hip replacement and fatigue. Harvey cites no objective evidence that shows she needs restrictions because of hip pain and fatigue. Nor does she explain what these limitations should be. Having reviewed the evidence, the court finds that the ALJ adequately accounted for all Harvey's functional limitations when assessing her residual functional capacity. In short, substantial evidence supports the ALJ's residual functional capacity assessment.

2. <u>Cannot hold job for significant period</u>: Harvey next asserts that the ALJ erred in considering only whether she could physically perform certain jobs, not whether she could maintain those jobs over a long period. In support of this argument, Harvey cites *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). In that case the Fifth Circuit held that a claimant qualifies as disabled if she cannot maintain employment, even if she sometimes can work for short spurts. *See id.* at 822.

Though Harvey couches this issue as one related to the ALJ's residual functional capacity assessment, it's really an attack on the ALJ's Step 5 finding that Harvey can perform available jobs. If Harvey is arguing that the ALJ legally erred by not explicitly finding that Harvey could maintain the jobs the ALJ found she could perform, this argument lacks merit. As the Fifth Circuit has since clarified, "[u]sually, the issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment." *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003). And Harvey hasn't explained why this general rule doesn't apply here.

*Singletary* is also distinguishable. In *Singletary*, the claimant's "personal history indicated that he was never able to hold a job for long periods of time." *Singletary*, 798 F.2d at 822. And all the doctors who examined the claimant determined that he suffered from various mental disorders that caused poor judgment, an inability to relate socially, antisocial tendencies, and poor insight. *See id.* Here, in contrast, most of Harvey's alleged impairments are physical, not mental. And Harvey hasn't cited any evidence that suggests that she suffers from intermittently recurring symptoms that would allow her to obtain employment but not keep it. So Harvey hasn't established that she'd suffer from the same problems as the claimant in *Singletary*.

3. <u>SSR 96-8p</u>: Harvey also contends that the ALJ failed to discuss her ability to perform sustained work activities in an ordinary workday like the social security regulations require. An ALJ's residual functional capacity finding "must include a narrative discussion describing how the evidence supports the ALJ's conclusion, citing specific medical facts and nonmedical evidence and discussing the claimant's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis." *Stowe v. Soc. Sec. Admin., Comm'r*, 2021 WL 2912477, at *7 (11th Cir. July 12, 2021) (citing SSR 96-8p). The ALJ also needs to: (1) explain how he resolved "material inconsistencies or ambiguities" in the record, and (2) "include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted." SSR 96-8p, 1996 WL 374184.

After reviewing the ALJ's hearing decision, the court finds that he complied with SSR 96-8p's requirements. The ALJ discussed in narrative form the record evidence and how he found this evidence to support his residual functional capacity assessment. R. 22–26. In this discussion, the ALJ cited specific medical facts, including Harvey's treatment notes, the results of Harvey's consultative exam, and the opinions of Dr. Iyer and the State agency physician. *Id.* The ALJ also discussed nonmedical evidence, such as Harvey's hearing testimony and reported daily activities. *Id.* During this discussion, the ALJ explained how he resolved inconsistencies in the record. For example, the ALJ explained that though some

evidence supported Harvey's allegations that she needed a cane, he determined that other record evidence established that she didn't need one. R. 24.

And in evaluating the State agency physician's opinion, the ALJ explained how the medical records corresponded with the limitations the ALJ assessed. R. 25–26. For example, the ALJ noted that Harvey's 5/5 strength of bilateral lower extremities and lack of muscle atrophy as well as her normal neurological examination supported the finding that Harvey could perform light work. R. 26. The ALJ also explained that both Harvey's hearing testimony and non-severe impairment of obesity supported allowing her to alternate sitting and standing every 20 minutes throughout the workday. *Id.* So the ALJ adequately discussed how Harvey could perform sustained work activities in an ordinary workday.

4. <u>Physical capacities evaluation</u>: Harvey's final argument for why the ALJ erred in assessing her residual functional capacity is that the ALJ needed to rely on a physical capacities' evaluation by either an examining or treating physician to make this assessment. This argument fails. At the hearing level, the ALJ, not doctors, has the sole responsibility of assessing a claimant's residual functional capacity. 20 CFR § 416.946(c). So while an ALJ must consider a medical source's opinion when assessing a claimant's residual functional capacity, the ALJ needn't base his residual functional capacity findings on a physician's opinion. *See Castle v. Colvin*, 557 F. App'x 849, 853–54 (11th Cir. 2014).

\* \* \*

To sum up, the ALJ complied with the SSA's requirements for evaluating a claimant's residual functional capacity. And substantial evidence supports the ALJ's residual functional capacity assessment. So the court rejects Harvey's argument that the ALJ's residual functional capacity assessment was deficient.

### B. Daily Life Activities Evidence

Harvey next asserts that the ALJ improperly found that evidence of her daily life activities diminished the persuasiveness of her allegations. The Eleventh Circuit applies a two-step "pain standard" to a claimant's subjective testimony about her pain and other symptoms. Under this standard, a claimant must first present "evidence of an underlying medical condition." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If she does, the claimant must then either: (a) present "objective medical evidence confirming the severity of the alleged pain," or (b) show "that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Id.* When an ALJ refuses to credit the claimant's subjective pain testimony, "he must articulate explicit and adequate reasons" for doing so. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

A claimant's admission that she participates in daily activities for short durations does not disqualify the claimant from disability, *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), but it is appropriate for an ALJ to consider daily

activities relevant to a claimant's subjective pain allegations. *See* 20 CFR § 416.929(c)(3)(i).

The ALJ found that the medical evidence established Harvey's impairments "could reasonably be expected to cause at least some of [her] alleged symptoms." R. 22. But the ALJ determined that Harvey's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 23. The ALJ then pointed to Harvey's daily activities as one of several factors that supported his credibility determination. As the ALJ noted, "despite her alleged functional limitations, [Harvey] is raising her nine-year-old son, attends his school activities, and [is] able to do activities such as shopping." R. 25.

Harvey doesn't deny that she engaged in the daily activities that the ALJ discussed. And a reasonable person could agree with the ALJ that these daily activities discredited Harvey's subjective pain testimony. So the ALJ properly pointed to Harvey's daily activities as one of several factors that supported his disability determination.

## IV. Conclusion

In summary, the court has reviewed the parties' briefs, the ALJ's findings, and the record evidence and finds that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. So the court will **AFFIRM** the SSA's denial of benefits. The court will enter a separate final order that closes this case.

**DONE** on January 13, 2022.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE